UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

        BENITO A. VENTOLA,

              Debtor.
--------------------------------------------------------x
ROBERT L. PRYOR, the Chapter 7 Trustee
of the bankruptcy estate of Benito A. Ventola,

             Plaintiff,

        - against -

BENITO A. VENTOLA and BIANCA
LADOWSKI a/k/a BIANCA VENTOLA,

           Defendants.
-----------------------------------------------------------x

Case No.: 07-70903-478

Chapter 7

Adv. Pro. No.: 07-8344-478

# MEMORANDUM DECISION AND ORDER

*Appearances:*

Pryor & Mandelup, L.L.P.
*Attorneys for the Chapter 7 Trustee*
By: Anthony Guiliano, Esq.
675 Old Country Road
Westbury, New York 11590

Silberling & Silberling
*Attorney for Defendant Bianca Ladowski*
By: Stephen P. Silberling, Esq.
Federal Plaza
300 Rabro Drive
Hauppauge, New York 11788

Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is the Chapter 7 Trustee's action against Defendant Bianca Ladowski a/k/a Bianca Ventola ("Bianca") seeking a declaratory judgment that the Debtor, Benito Ventola, is the equitable owner of proceeds generated from the sale of real property located at 301 Deer Road, Lake Ronkonkoma, New York, and imposing a constructive trust against such proceeds for the benefit of the bankruptcy estate or, to the extent the proceeds are no longer available, a judgment against Bianca for the amounts by which she is alleged to be unjustly enriched.  The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334.  This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), § 157(b)(2)(E), and § 157(b)(2)(O), and 11 U.S.C. § 541, § 542 and § 544(b).  Based upon the facts and law in this case, the Plaintiff's request for declaratory judgment is denied.  The following constitutes the Court's finding of fact and conclusions of law as mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

FACTS

The Debtor filed for Chapter 7 relief under the Bankruptcy Code on March 16, 2007. Robert L. Pryor, Esq. was appointed as the Chapter 7 Trustee.  The Debtor's schedules to his bankruptcy petition list $5,620 in personal property consisting of $120 in a checking account, $2,000 in household goods, $1,500 in clothes, $500 in jewelry and $2,000 with respect to a vehicle.  The Debtor listed only 3 unsecured creditors: 1) Beneficial/ Household Finance with respect to a line of credit in the sum of $15,095 which was opened in September 2001 and last active in January of 2007; 2) Capital 1 Bk with respect to a debt arising from 2 credit cards in the sum of $4,747 for one and $2,920 for the other; and 3) Capital One Fsb with respect to a credit card debt in the sum of $3,236.  The credit cards were opened some time between May of 2000 and September of 2003 and were last active in February of 2007.

1

The Debtor's schedules indicate that his sole source of income at the time of filing was $1,214 in social security and his monthly expenses were $2,166, leaving him with a monthly deficit of $952.  The Debtor retired in 1998 and has not been employed at any time within the last ten years.  Prior to his retirement, the Debtor owned a business providing payroll service to companies which built railroad cars.  At some point, Catherine M. Ventola ("Catherine"), the Debtor's deceased wife, also owned her own business providing a similar payroll service.  Approximately 8 months prior to Catherine's death from cancer on February 1, 2005, Catherine's business ceased to exist.

The Debtor and Catherine were married for 35 years and had 3 children, Bianca Ladowski, Rocco Anthony Cipriano, and Danielle Perry.  In July of 1991, Catherine obtained a term life insurance policy issued by Prudential Insurance Company of America in the sum of $50,000 in which she designated Bianca as the beneficiary.  In addition, Catherine was apparently the sole owner of real property located at 301 Deer Road, Lake Ronkonkoma, New York (the "Premises") at which she and the Debtor resided.  Catherine had a will under which she purportedly left all her assets to her children.  There is no evidence presented showing that the Debtor was the intended beneficiary of such will or a prior will, if any.  On December 29, 2004, in anticipation of her impending death, Catherine executed a Last Will and Testament (the "2004 Will") which superceded the prior will.  The 2004 Will bequeathed all of her real and personal property, including the Premises, to Bianca and did not provide for any distribution to the other children.  A decision had been made by Catherine to give the Premises to Bianca because the other daughter, Danielle, was married and had her own house; whereas, Bianca and her husband did not have a house. In addition, Bianca's parents were concerned about her

2

welfare. It was also contemplated that the Debtor would continue to reside at the Premises as the Debtor could not afford to purchase a house for himself.

Neither the Debtor nor the children contested the 2004 Will. The Debtor did not exercise any right of election given to a surviving spouse to take a share of the decedent's estate under New York Estate Powers and Trust Law § 5-1.1.

Shortly after her mother's death, Bianca and her husband decided to separate. Accordingly, Bianca moved onto the Premises without her husband.  Because Bianca did not have sufficient funds to pay for her mother's funeral expenses, she borrowed $25,000 from her uncle, Thomas Fernandez, pursuant to a check dated January 28, 2005.  Bianca repaid the $25,000 to Thomas Fernandez in March of 2005 when she received the proceeds of Catherine's insurance policy.

Bianca deposited the life insurance proceeds into a bank account and used the remainder of the funds to pay for the mortgage and carrying charges of the Premises and for living expenses. Bianca gave the Debtor access to the bank account through the use of an ATM card which he used to pay the mortgage and bills.   Bianca obtained employment in March through June of 2005 selling music that plays in elevators and buildings and then another job as a debt counselor at Debt Counseling Corporation from August of 2005 to August of 2007.  Bianca's salary and savings were insufficient to carry the expenses for the Premises.  From July of 2005 to January of 2006, Bianca on 6 separate occasions, borrowed additional monies from Thomas Fernandez in the aggregate sum of $40,000.

The Debtor continued to reside at the Premises until the Premises were sold in May of 2006.  The sale of the Premises generated approximately $100,000 to $150,000 in net proceeds.

Bianca placed the proceeds arising from the sale of the Premises into a bank account and repaid Fernandez the $40,000 in loans she received from July of 2005 to January of 2006. After the sale, the Debtor moved to his own apartment while Bianca moved to a separate apartment in Bayport. However, with Bianca's consent, the debtor had access to the bank account containing the remainder of the sale proceeds and used most of the funds in the bank account for his living expenses. Bianca's own living expenses were covered by her income from earnings and her ex-husband's contribution to the household.

When the sale proceeds in the bank account had been expended, the Debtor moved in with his other daughter, Danielle Perry, and her family and has continued to reside with them since May of 2007. The Debtor pays for his own expenses with his social security income.

On December 20, 2007, the Chapter 7 Trustee filed this adversary proceeding against the Debtor and Bianca seeking to deny the Debtor his discharge and seeking to impose a constructive trust on the proceeds from the sale of the Premises and the life insurance policy. The Trustee alleges that there are creditors listed in the Debtor's schedules that existed at the time of Catherine's death, and that there was an expressed or implied promise that first Catherine, and then Bianca upon Catherine's death, would hold the Premises for the benefit of the Debtor and would retransfer the Premises upon the Debtor's discharge of his debts. As a result, the Trustee seeks to avoid the ownership of the Premises and insurance proceeds under 11 U.S.C. § 544(b) and have the Court find that the proceeds from the sale of the Premises and the life insurance policy should be held in constructive trust for the benefit of the Debtors' creditors.

Bianca filed an Answer on January 31, 2008. At a previously scheduled pre-trial conference held on July 10, 2008, the Court set a schedule requiring all discovery to be

4

completed by September 12, 2008 and a pre-trial statement to be filed by October 10, 2008, and

setting October 28, 2008 as the trial date.  On October 28, 2008, the Court held the trial on the

issues of whether a constructive trust should be imposed on the proceeds from the sale of the

Premises and the insurance policy or, in the alternative, whether Bianca was unjustly enriched

when she received the sale proceeds and insurance proceeds and expended such proceeds. The

Debtor, Bianca and Danielle Perry testified at the trial.  The Court finds their testimonies to be

credible.  After the trial, both parties submitted their findings of fact and post-trial memorandum.

<u>DISCUSSION</u>

Under 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor

in property or any obligation incurred by the debtor that is voidable under applicable law by a

creditor holding an allowable unsecured claim.  Under New York law, to find constructive trust

the courts look to see if there are (1) a confidential or fiduciary relation, (2) a promise, (3) a

transfer in reliance thereon, and (4) unjust enrichment.  *Counihan v. Allstate Ins. Co.*, 194 F.3d

357, 361-362 (2d Cir. 1999), citing *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121, 386 N.Y.S.2d 72,

351 N.E.2d 721 (1976).

Courts have stressed that the doctrine of constructive trust needs to be applied with

"sufficient flexibility to prevent unjust enrichment in a wide range of circumstances."  *Koreag,*

*Controle et Revision S.A. v. Refco F/X Associates, Inc. (In re Koreag, Controle et Revision S.A.)*,

961 F.2d 341, 353 (2d Cir. 1992), citing *Palazzo v. Palazzo*, 121 A.D.2d 261, 264, 503 N.Y.S.2d

381, 383-84 (N.Y. App. Div. 1986).  While the courts do not require that each of these foregoing

elements be satisfied, the Court of Appeals for the Second Circuit has recognized that "New

York courts do insist upon ... a showing that property is held under circumstances that render

unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment." *Counihan v. Allstate Ins. Co.*, 194 F.3d at 362.

In arguing that a constructive trust should be imposed, the Trustee asserts that (a) a confidential relationship existed between Catherine and Bianca, (b) there was either an expressed or implicit understanding that Bianca would take care of the Debtor with her inheritance, (c) Catherine transferred her interest in the Premises and in the insurance policy on reliance of such promise, and (d) Bianca was unjustly enriched by her inheritance as the funds should have gone to benefit the Debtor's creditors. The Trustee, however, provided no evidence to support this allegation.

Due to the mother-daughter relationship, a confidential relationship existed between Catherine and Bianca. *Ricotta v. Ricotta,* 135 A.D.2d 1143 (N.Y. App. Div. 1987). There was also a transfer of property from Catherine to Bianca in the form of her interest in the Premises and the receipt of the proceeds from Catherine's life insurance policy when Bianca inherited her mother's assets.

With respect to a promise, there was no express or written agreement that either Catherine or Bianca would hold the Premises and the life insurance proceeds for the Debtor's benefit. However, a formal writing or express promise has been found not to be essential to the application of a constructive trust, where an obligation can be inferred from the entire transaction. *Sharp v. Kosmalski*, 40 N.Y.2d at 122. Nevertheless, in this case, there is no evidence of any discussion regarding the treatment of the proceeds from Catherine's life insurance policy prior to Catherine's death. The only discussion appeared to be Catherine's decision to leave the Premises solely to Bianca because Danielle Perry already had her own

6

house and the transfer was a means of giving Bianca her own house with the implicit understanding that the Debtor, her father, would continue to live with Bianca and her family. There was no evidence of any understanding among the Debtor, Catherine and Bianca that Bianca would hold the Premises and the life insurance proceeds in order to enable the Debtor to avoid paying his creditors. At most, there was a promise from his daughter that the Debtor would be permitted to continue to reside at the Premises after Catherine's death.

Even if an implicit promise to allow the Debtor to continue to reside at the Premises can be construed as a promise, the Trustee has failed to prove that Bianca's receipt of the Premises and life insurance proceeds pursuant to Catherine's 2004 Will constituted an unjust enrichment. Even if one of the other elements of constructive trust is absent, the finding of unjust enrichment is key. While the Trustee alleges that the proceeds of the Premises and the insurance policy were held for the benefit of the Debtor, the Trustee has not presented any evidence showing that the Debtor was the intended beneficiary. When Catherine purchased the life insurance policy in 1991, she named Bianca as the only beneficiary of the policy. Catherine purchased the insurance policy prior to the Debtor obtaining any of the credit cards or the credit line listed in his bankruptcy schedules and there is no evidence that the Debtor was the original beneficiary of the policy and that Catherine changed the beneficiary to enable the Debtor to avoid paying his creditors.

Similarly, there is no evidence that the Debtor had a legal or equitable interest in the Premises. The fact that Catherine bequeathed the Premises solely to Bianca under the terms of the 2004 Will does not demonstrate that the Debtor had any interest in the Premises. There is no showing that the parties agreed that the Premises was to be conveyed to Bianca under the 2004

Will in order to preserve any alleged interest the Debtor had in the Premises.    Moreover, under

the prior will, each of Catherine's children, and not the Debtor, purportedly would have shared in

Catherine's estate according to specified percentages.    Rather, it was simply expected that

Bianca would take care of her father given the father-daughter relationship.

There is also no evidence that Bianca breached her implicit promise to her mother to

permit the Debtor to reside at the Premises after Bianca inherited the home.  Bianca allowed the

Debtor to continue to live on the Premises even after she moved onto the Premises. In addition,

after repaying her uncle for a loan to cover her mother's funeral expenses from the insurance

proceeds, she used the remainder of the insurance proceeds, *inter alia*, to maintain the Premises

and support the Debtor until she could no longer afford to do so on her income and had to sell

the Premises.  Subsequently, she permitted the Debtor access to the proceeds from the sale of the

Premises in order to rent a separate apartment for himself and to pay for his living expenses.

These funds came from Bianca's generosity from her personal funds to which she was legally

entitled. Once those funds were spent and Bianca could not provide for the Debtor, the Debtor's

other daughter allowed the Debtor to reside with her and her family and continues to provide him

a home.

While unjust enrichment does not necessarily require a wrongful act as innocent parties

may be unjustly enriched, it does require a party to hold property 'under circumstances that in

equity and good conscience he ought not to retain it."  *In re Koreag, Controle et Revision S.A.)*,

961 F.2d at 354, quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 242, 408 N.Y.S.2d 359, 380

N.E.2d 189 (1978) In this case, while the Debtor undeniably obtained the benefit of Bianca's

inheritance in that she provided him with shelter and funds to pay for living expenses, Bianca

8

was the intended beneficiary of Catherine's estate. There is no evidence to support the Trustee's allegations that the property belonged to the Debtor and that Bianca could not in equity and good conscience retain the proceeds of the Premises and the insurance policy at the time she received them.

While the Trustee questions the Debtor's decision to not exercise his elective right under New York Estate Powers and Trust Law § 5-1.1 to partake in a share of Catherine's estate, the Debtor's failure to make such an election alone is not sufficient to support a finding that the Debtor's creditors have been prejudiced to their detriment without additional evidence of an attempt by the Debtor to avoid paying his creditors. Indeed, courts have found that "[u]ntil the debtor exercises his personal statutory right to the election, no rights in his deceased wife's property are ascribable to the debtor." *In re McCourt*, 12 B.R. 587, 589 (Bankr. S.D.N.Y. 1981)(finding that a debtor who transferred his interest in real property to his wife had no property rights in his late wife's estate that was capable of being assigned to the trustee when he failed to exercise his personal right of election prepetition). See also *In re Brand*, 251 B.R. 912, 915-196 (Bankr. S.D. Fla. 2000). In addition, while the Debtor had creditors at the time of Catherine's death, there is no evidence that the Debtor was not making payments to these creditors even if such payments were not in full or that the Debtor sought to avoid paying his debts.

Accordingly, there is no evidence or showing that Bianca was unjustly enriched by Catherine's transfer of property to her. Therefore, the Court declines to impose a constructive trust on the proceeds from the sale of the Premises and the life insurance policy and declines to grant the Trustee's alternative request for a judgment declaring unjust enrichment on the part of

9

Bianca based upon the foregoing reasons.

<u>CONCLUSION</u>

1.      The Trustee's third cause of action for a declaratory judgment imposing a constructive

        trust or, in the alternative, finding unjust enrichment on the part of Defendant Bianca

        Ladowski a/k/a Bianca Ventola is hereby dismissed.


SO ORDERED.


Dated: December 11, 2008
        Central Islip, New York

                                                              _s/ Dorothy Eisenberg_____
                                                              Dorothy Eisenberg
                                                              United States Bankruptcy Judge